

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

January 25, 1972

Honorable Bob Armstrong
Commissioner
General Land Office
Austin, Texas     78701

Opinion No. M-1046

Re: Whether a twenty-five
year term mineral lease
may be extended beyond
its fixed terms by virtue
of a force majeure clause
under presented facts.

Dear Mr. Armstrong:

You request our opinion on whether a twenty-five year term mineral lease, dated June 11, 1946, was in good standing at the time an extension of the lease was applied for under the provisions of Article 5344c, Section 2, Vernon's Civil Statutes.

Prior to 1948, the State of Texas issued a considerable number of twenty-five year term oil and gas leases. In order to prevent the rapid depletion of mineral reserve under such leases and to prevent wasteful production practice, and to increase the revenue of the Public Free School Fund, House Bill 17, Acts of the 50th Legislature, Regular Session, 1947, Chapter 82, Page 139, codified in Vernon's as Article 5344c, Vernon's Civil Statutes, was enacted. This Act authorized the School Land Board, on application made prior to October 1, 1948, to amend these leases to extend their terms for as long as minerals are being produced in paying quantities and authorized the Board to fix the consideration for each amendment.

Section 2 of House Bill 17, Acts of the 50th Legislature, Regular Session, 1947, has been amended numerous times to change the cut-off date for filing an application to extend the fixed term leases.

House Bill No. 1755, Acts of the 62nd Legislature, First Called Session, 1971, again changed the cut-off date. No other change was made by the 1971 amendment which became effective June 15, 1971.

Article 5344c, Sec. 2, as amended in its relevant portion, now reads:

-5111-

"Sec. 2.   Any lease heretofore granted and in good standing covering any of the lands or areas referred to in Section 1 of this Act, upon application by any owner thereof to the Commissioner of the General Land Office before December 1, 1971, may be amended under the terms of this Act so as to provide that such lease shall remain in effect as long after the expiration of its primary term as oil, gas, or other mineral covered by such lease is produced therefrom,. . ."

The lease in question was given on the 11th day of June, 1946, and it covered ninety acres of the Brazos River Bed located in Fort Bend County.  Normally, under the terms of the lease, the twenty-five year period would end on June 11, 1971.  An application to extend the lease as provided by Article 5344c, Sec. 2, was filed on October 4, 1971.

You state in your request that the applicant and owner of the lease maintains that the lease was extended beyond October 4, 1971, under the force majeure clause contained in paragraph 10 of the oil and gas lease.  The term "force majeure" (or its Latin equivalent, vis major) originally was restricted to forces of nature, as stated in The George Shiras, 61 Fed. 300, 301 (3d Cir. 1894):

". . .A loss is said to be caused by vis major when it results immediately from a natural cause, without the intervention of man, and could not have been prevented by the exercise of prudence, diligence, and care. . .Thus, a storm of unusual and extraordinary violence, a sudden gust of wind, and a tempest, have been held to be examples of vis major. . ." (Emphasis supplied.)

However, later cases tended toward a broader definition of force majeure and in Pacific Vegetable Oil Corp. vs. C.S.T., Ltd., 29 Cal.2d 228, 238, 174 P.2d 441 (Cal.Sup., 1946), the Court held that governmental action provoked by the necessity of war constituted force majeure.  The Court there stated:

"'Force majeure', or the Latin expression 'vis major', is not necessarily limited to the equivalent of an Act of God.  The test is whether under the particular circumstances there was such an insuperable interference occurring without the party's intervention as

could not have been prevented by the exercise
of prudence, diligence and care. . . ."
(Emphasis supplied.)

The force majeure clause in the lease in question reads,
in part, as follows:

"10.  Should lessee be prevented from com-
plying with any express or implied covenant
of this lease, from conducting drilling opera-
tions thereon, or from producing oil and/or gas
therefrom, after effort made in good faith, by
reason of war, rebellion, riots, strikes, acts
of God, or any order, rule or regulation of
governmental authority, then while so prevented,
lessee's obligation to comply with such covenant
shall be suspended and lessee shall not be
liable for damages for failure to comply there-
with; and this lease shall be extended while
and so long as lessee is prevented, by any such
cause, from drilling, reworking operations or
producing oil, gas or other minerals from the
leased premises; provided, however, that noth-
ing herein shall be construed to suspend the
payment of delay rentals in order to maintain
this lease in effect during the primary or ex-
tended term in the absence of such drilling or
reworking operations or production of oil and/or
gas."   (Emphasis added.)

Under a fixed term lease such as we have here, the lessee
has twenty-five years in which to produce the oil and gas, and,
if he is prevented by causes beyond his control, then, in effect,
the lessee does not have a twenty-five year term lease.

The undisputed facts as furnished to us from your office
indicate that for a total period in excess of 120 days over the
past twenty-five years, the lessee was prevented from drilling,
reworking operations or producing by reason of "Acts of God"
and/or by "order, rule or regulation of governmental authority"
within the literal meaning of paragraph 10 of the lease.  The
information furnished reflects no lack of good faith efforts by
the lessee.  Thus, under the language of paragraph 10, the lease
has been extended beyond October 4, 1971, by its own terms.

Therefore, it is the opinion of this office that the force
majeure clause has extended the lease in question in excess of
120 days past the regular expiration date of June 11, 1971.  It

is further our opinion that the lease was in good standing on October 4, 1971, at the time application was made to the Board for an extension of the lease and, thus, the School Land Board may consider the application to extend the lease now pending before the School Land Board.

### SUMMARY

Under the existing facts, the lease in question has been extended by the force majeure clause and the lease was in good standing on the date the application to renew was made.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Linward Shivers
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
J. Milton Richardson
John Reeves
Jim Broadhurst
Marietta Payne

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant